UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JEFFREY ADKINS, an individual<br><br>Plaintiff,<br><br>v.<br><br>J.B. HUNT TRANSPORT, INC., a Georgia corporation; and DOES 1 through 20 inclusive,<br><br>Defendants. | Civ. No. 2:18-28 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND AND MOTION TO STAY |

----oo0oo----

Plaintiff Jeffrey Adkins brought this action against defendants J.B. Hunt Transport, Inc. ("J.B. Hunt") and Does 1-20 based on plaintiff's employment with defendant and subsequent termination. Before the court is plaintiff's Motion to remand (Docket No. 6) and defendant J.B. Hunt's Motion to stay plaintiff's eighth through thirteenth causes of action (Docket No. 9.)

On October 18, 2017, plaintiff filed a Complaint in the Superior Court of the State of California, County of San Joaquin

1

containing the following claims: (1) Disability Discrimination; (2) Failure to Reasonably Accommodate; (3) Failure to Engage in Interactive Process; (4) Retaliation in Violation of Fair Employment and Housing Act ("FEHA")[Gov't Code 12940, et seq.]; (5) Failure to Prevent Discrimination and Retaliation; (6) Retaliation in Violation of Government Code § 12945.2; (7) Wrongful Termination in Violation of Public Policy; (8) Failure to Pay Overtime Wages; (9) Failure to Provide Meal Periods; (10) Failure to Provide Rest Periods; (11) Failure to Provide Accurate Wage Statements; (12) Failure to Pay All Wages Due Upon Separation; and (13) Unfair Business Practices in Violation of Business and Professions Code § 17200. Defendants removed the case under 28 U.S.C. § 1441(b) based on diversity jurisdiction under 28 U.S.C. § 1332(a). (Def.'s Notice of Removal (Docket No. 1).) Defendant removed the case to this court on January 5, 2018.

I. Motion to Remand

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ." 28 U.S.C. § 1441(b). District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." 28 U.S.C. § 1332. The party asserting diversity jurisdiction bears the burden of proof. Resnik v. La Paz Guest Ranch, 289 F.2d 814, 819 (9th Cir. 1961) "The burden is particularly stringent for removing defendants,"

*Corral v. Select Portfolio Servicing, Inc.*, Civ. No. 15-16574, 2017 WL 6601872, at *2 (9th Cir. Dec. 27, 2017), and "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). Plaintiff argues that removal was improper because defendant has failed to establish that the amount in controversy requirement has been met.

Defendant asserts, and plaintiff does not dispute, that J.B. Hunt is a citizen of Georgia and Arkansas, and that plaintiff is a citizen of California. (Def.'s Notice of Removal at 2-4.) Thus, the only question before the court is whether the amount in controversy is over $75,000.

When the plaintiff does not dispute the amount in controversy, "[a] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). However, if the plaintiff contests the amount in controversy requirement, then "evidence establishing the amount is required" and "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "A defendant cannot establish removal jurisdiction

3

by mere speculation and conjecture, with unreasonable assumptions." Id.

To determine if the amount in controversy requirement is met, the court looks to the amount demanded by the plaintiff in the Complaint. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291-92 (1938). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson, 319 F.3d at 1090. Here, it is not facially evident from the Complaint that the amount in controversy exceeds $75,000. The Complaint did not request a specific amount in damages, but prayed for compensatory, general, special, punitive, exemplary statutorily available damages as well as attorneys' fees and costs. (Compl. Prayer for Relief.) As provided by Business and Professions Code §§ 17200, the Complaint also asks for restitution, and an order requiring defendant to restore and disgorge all funds acquired by means of any act or practice declared by this court to be unlawful, unfair, or fraudulent. (Id.)

A. Compensatory Damages

On plaintiff's FEHA and wrongful termination of public policy claims, plaintiff seeks compensatory damages or front pay and back pay. "Front pay" is "a measure of damages for loss of future income, as opposed to backpay, which is lost-wages damages through the time of trial." Andrade v. Arby's Rest. Grp., Inc., 225 F. Supp. 3d 1115, 1140 (N.D. Cal. 2016) (quoting Horsford v. Bd. Of Trustees Of California State Univ., 132 Cal. App. 4th 359,

388 (5th Dist. 2005)).

1. Back Pay

Defendant calculates plaintiff's back pay wages to be worth $36,512.00. (Def.'s Notice of Removal at 5.) Defendant arrived at this number by multiplying $11.41 (the estimated hourly rate of pay for plaintiff) by 40 (the estimated hours plaintiff worked per week[1]), to show that the plaintiff earned approximately $456.40 during an average workweek. Then defendant multiplied $456.40 by 28 (the number of workweeks between June 22, 2017, plaintiff's last day of work, and January 5, 2018, the date of the Notice of Removal) which totals $12,799.20 of back pay. Thus, defendant has presented sufficient evidence that plaintiff has put $12,799.20 worth of back pay at issue.

Thus, defendant has established evidence that the amount in controversy regarding plaintiff's back pay is $12,799.20. Accordingly, the court will consider that amount in determining whether the amount in controversy requirement is met.

2. Front Pay

Defendant estimates that plaintiff seeks at least $47,465.60 in front pay by estimating that plaintiff seeks front pay damages for two years.[2] (Def.'s Notice of Removal at 6.) The court is hesitant to accept defendant's estimate where "the Complaint does not expressly seek two years front pay or bonuses. Thus, Defendant's conjecture that Plaintiff could seek or be

---

[1] Plaintiff agrees that he worked 40 hours per week. (See Compl. ¶¶ 18, 90.)

[2] 104 workweeks x $456.40 per week = $47,465.60.

5

entitled to two years front pay is speculative and insufficient to meet its burden." Paris v. Michael Aram, Inc., Civ. No. 18-67 PA (SKX), 2018 WL 501560, at *2 (C.D. Cal. Jan. 22, 2018). Accordingly, the court will not include the estimated amount of front pay in calculating the amount in controversy.

B. Labor Code Penalties

1. Overtime Violations

Plaintiff alleges defendant failed to pay overtime wages. (Compl. ¶¶ 86-91.) Defendant estimates that plaintiff seeks at least $14,804.48 in overtime wages. (Def.'s Notice of Removal at 7.) The Complaint is silent as to how many hours of overtime pay plaintiff is seeking. Therefore, defendant estimates that if plaintiff claims he did not receive 5 hours of overtime pay per week, multiplied by 1.5 times plaintiff's 52-week average hourly rate of pay of $11.41, then plaintiff has placed $14,804.48[3] in controversy on his overtime claim. (Id. at 7-8.) While defendant can make reasonable assumptions, defendant's calculation rests on the speculative assumption that plaintiff was denied five hours of overtime pay every week.

Here, plaintiff alleges that he routinely worked in excess of eight hours per day and/or forty hours per week, and/or on a seventh consecutive day in a work week, but plaintiff does not provide any estimate as to the number of overtime hours he was allegedly not compensated for by defendant. (Compl. ¶ 90.) Thus, the court may not consider defendant's calculation of

---

[3] 173 weeks x 5 hours overtime/week x 11.41/hr x 1.5 premium = $14,804.48

6

overtime because "the court may not base its jurisdiction on speculation and conjecture." Smith v. Brinker Int'l, Inc., Civ. No. 10-213 VRW, 2010 WL 1838726, at *3 (N.D. Cal. May 5, 2010) (citation omitted) (refusing to consider defendant's calculation for overtime damages where defendant assumed each plaintiff worked 2.5 hours overtime each day but that assumption was not supported by the allegations in the complaint and defendants provided no sufficient basis to apply its assumption.) Accordingly, the court will not consider defendant's estimate of $14,804.48.

### 2. Meal and Rest Break Violations

Plaintiff alleges that defendant failed to provide meal periods and rest periods in violation of Labor Code § 226.7. (Compl. ¶¶ 92-107.) Defendant estimates that plaintiff seeks at least $9,869.65 in meal period premiums and $9,869.65 in rest break periods. In order to arrive at those estimates, defendant assumed that plaintiff missed 1 rest break per day and 1 meal period per day.[4] (See Notice of Removal ¶¶ 35, 37.) Plaintiff alleges that during the relevant time period, plaintiff did not receive compliant meal periods for working more than five and/or ten hours per day because his meal periods were short, missed, or late and/or he was not permitted to take a second meal period. (Compl. ¶ 94.) As to rest periods, plaintiff alleges that during the relevant time period, plaintiff did not receive a ten minute rest period for every four hours or major fraction thereof worked

---

[4] 173 weeks x 5 meal period premiums/week x $11.41 = $9,869.65 and 173 weeks x 5 rest break premiums/week x $11.41 = $9,869.65.

7

because he was required to work though his daily rest periods and/or was not authorized to take his rest periods. (Id. ¶ 104.) Plaintiff further alleges that throughout his employment, he was not authorized or permitted to take his meal periods or rest periods. (Id. ¶¶ 16, 17.)

The court finds that defendant's estimate that plaintiff missed one meal period and rest period every day is reasonable and supported by the Complaint. Here, the Complaint reasonably suggests that during the relevant time period, plaintiff regularly did not receive compliant meal periods and rest breaks. Moreover, as to rest periods, plaintiff alleges that he did not receive a ten minute rest period for "every" four hours worked and/or was not authorized to take his breaks. Thus, the court believes that defendant's assumption that plaintiff alleges he was denied these breaks every day is reasonable. See Giannini v. Nw. Mut. Life Ins. Co., Civ. No. 12-77 CW, 2012 WL 1535196, at *3 (N.D. Cal. Apr. 30, 2012) (finding "defendants' assumption of a one-hundred-percent violation rate on days worked by class members for these claims is supported by the allegations in the complaint.")

Accordingly, the court will consider the $9,869.65 for meal period premiums and the $9,869.65 for rest break premiums to determine the amount in controversy.

3. Waiting Time Penalties

In his twelfth cause of action, plaintiff alleges a claim for failure to timely pay wages upon separation of employment pursuant to Labor Code section 203. (Compl. ¶¶ 115-120.) Defendant estimates a total amount in controversy of

8

$2,738.40 in waiting time penalties under plaintiff's twelfth cause of action. (Def.'s Notice of Removal at 7.) Defendant calculates this number based on the statutory maximum permitted under the statute.[5] Labor Code section 203 provides for a maximum statutory "waiting time penalty" of thirty days of wages. Here, plaintiff alleges that plaintiff's employment was terminated on June 22, 2017, and defendant has failed to pay plaintiff all of the unpaid wages and compensation due to him at the time of his termination. (Compl. ¶ 119.) Thus, it is reasonable for the defendant to assert the statutory maximum. Accordingly, the court will consider $2,738.40 in waiting time penalties in determining if the amount in controversy requirement is met.

### 4. Wage Statement Penalties

Defendant estimates a total amount in controversy of $4,000 for wage statement penalties. The statutory penalty for such a violation is $50 for the first pay period and $100 for each subsequent pay period, up to a total maximum penalty of $4,000. Cal. Lab. Code § 226(e). Because defendant paid plaintiff weekly, if plaintiff were issued 52 wage statements that violated Labor Code § 226, then plaintiff would reach the statutory maximum penalty of $4,000.[6] (Def.'s Notice of Removal ¶ 39.) Here, plaintiff alleges that during the relevant time period, defendant failed to comply with Labor Code Section 226(a)

---

[5] 30 days x $11.41/hr x 8/hr. per day = $2,738.40. (Def.'s Notice of Removal at 7.)

[6] (1 initial violation x $50/initial violation) + (51 subsequent violations x $100/subsequent violations) = $5150, which is greater than $4,000.

9

on wage statements that were provided to plaintiff. (Compl. ¶ 110.)  Thus, there is reasonable support in the Complaint that plaintiff put in controversy at least $4,000 in penalties. Accordingly, the court will consider this amount in determining the amount in controversy.

     C.    Other Damages and Fees

Defendant argues that each claim for emotional distress, punitive damages, and attorneys' fees could individually achieve the amount in controversy requirement. (Def.'s P. & A. at 15.)

         1.    Emotional Distress

"Emotional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint." Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). To "establish the likely amount of recoverable emotional distress damages, a removing defendant may provide evidence in the form of jury verdicts from similar cases." Lisa Amanda Guillen, et al. v. Kindred Healthcare Operating, Inc., Civ. No. 17-2196 JAK FEMX, 2018 WL 1183354, at *5 (C.D. Cal. Mar. 7, 2018).

Here, the amount plaintiff seeks for emotional distress is unclear. Defendant cites several employment discrimination cases to "indicate[] that emotional distress damages in a successful employment discrimination case may be substantial." Simmons, 209 F. Supp. 2d at 1034.  It is near impossible to find a case where the claims and facts are identical to the present case.  However, defendant has cited to several employment cases where the emotional distress damages alone would more than

satisfy the jurisdictional minimum. For instance, defendant cites a racial discrimination case where the jury awarded plaintiff $5,612 in back pay, and $30,000 for emotional distress. Swinton v. Potomac Corp., 270 F.3d 794, 799 (9th Cir. 2001). Defendant also cites Kroske v. U.S. Bank Corporation, an age discrimination case, where the court concluded that the district court did not err in finding that the amount in controversy was met where plaintiff's lost wages amounted to at least $55,000 and her emotional distress damages would add at least an additional $25,000 to her claim. 432 F.3d 976, 980 (9th Cir. 2005).

Here, the court will conservatively consider a conservative estimate of $10,000, an amount even less than a 1:1 ratio of emotional distress damages to economic damages, to determine the amount in controversy. See Garfias v. Team Indus. Servs., Inc., Civ. No. 17-4282 JAK AGRX, 2017 WL 4512444, at *5 (C.D. Cal. Oct. 10, 2017).

2. Punitive Damages

Plaintiff also seeks punitive damages. (Compl. Prayer for Relief.) Punitive damages are available in FEHA cases. Garfias, 2017 WL 4512444, at *5. To determine the amount in controversy, a court may also consider punitive damages. See Haldiman v. Cont'l Cas. Co., 666 F. App'x 612, 614 (9th Cir. 2016). "To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts." Simmons, 209 F. Supp. 2d at 1033. "The fact that the cited cases involve distinguishable facts is not dispositive." Id.

Defendant cites cases in employment actions with

sizable punitive damage awards. See Aucina v. Amoco Oil, Co., 871 F. Supp. 332, 334 (S.D. Iowa 1994). As a conservative estimate, the court will consider $10,000 in potential punitive damages, an amount even less than a 1:1 ratio of compensatory damages to economic damages.

### 3. Attorneys' Fees

Plaintiff also seeks attorneys' fees pursuant to Labor Code §§ 1194, 226, 218.5 and Government Code Section 12965(b). (Compl. Prayer for Relief.) "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). "[T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." Simmons, 209 F. Supp. 2d at 1035. "The amount of fees commonly incurred in similar litigation can usually be reasonably estimated based on experience." Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002).

"Employment claims have been found to 'require substantial effort from counsel.'" Sasso v. Noble Utah Long Beach, LLC, Civ. No. 14-9154-AB AJWX, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015); see also Simmons, 209 F. Supp. 2d at 1035 (considering attorneys' fees in calculating jurisdictional minimum noting that "maintaining a race discrimination claim will undoubtedly require substantial effort from counsel" and that in the court's experience "attorneys' fees in individual discrimination cases often exceed the damages."). Defendant

12

cites cases to establish that attorneys' fee awards in FEHA cases can be sizeable. See Def.'s Notice of Removal at 11 (citing Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1472 (9th Cir. 1995) (affirming $724,380 in attorneys' fees in FEHA and Age Discrimination in Employment Act case where plaintiffs' damages were significantly less); Flannery v. Prentice, 26 Cal. 4th 572, 576 (2001) (affirming award of attorneys' fees and costs of $891,042)).

Courts have "held that a reasonable rate for employment cases is $300 per hour" and "100 hours is an appropriate and conservative estimate" of the number of hours expended through trial for an employment action. See Sasso, 2015 WL 898468, at *6 (citations omitted). Accordingly, the court will consider a reasonable and conservative estimate of the attorney's fees at the time of removal would be $30,000, or $300/hr x 100 hours.

D. Conclusion

Based upon the foregoing, the court concludes that defendant has presented sufficient evidence that plaintiff has put in issue the following: (1) $12,799.20 for back pay, (2) $9,869.65 for meal period premiums; (3) $9,869.65 for rest break premiums; (4) $2,738.40 of waiting time penalties; (5) $4,000 of wage statement penalties;(6) $10,000 in emotional distress damages; (6) $10,000 in punitive damages; and (7) $30,000 in attorneys' fees, totaling $ $89,276.90.

Because the amount in controversy is satisfied, defendants properly removed this action to federal court, and the court will deny plaintiff's Motion to Remand. The court next considers defendant's Motion to Stay.

13

II. Motion to Stay

Defendant asks the court to exercise its discretion to stay plaintiff's eighth through thirteenth causes of action--which assert various wage and hour claims--under the "First to File Rule." (Def.'s Mot. (Docket No. 9).) Defendant argues that this proceeding is similar to three other pending class actions: (1) Ortega, et. al. v. J.B. Hunt Transport, Inc., Civ. No. 07-8336 (C.D. Cal.) (the "Ortega action"); (2) Aceves v. J.B. Hunt Transport, Inc., Civ. No. 13-6133 (Cal. 2013) (the "Aceves action"); and Parks v. H.B. Hunt Transport, Inc., Civ. No. 16-9097 (C.D. Cal.) (the "Parks action"). (Def.'s Mot. at 3.) Thus, defendant asks that the court stay plaintiff's wage and hour claims pending final resolution of the Ortega, Aceves, and Parks class actions. (Def.'s Mem. of P. & A. at 1.)

    A. Related Cases

        1. The Ortega Action

On November 19, 2007, Ortega filed a class action to recover unpaid wages and penalties from defendant J.B. Hunt in the Superior Court of the State of California, Los Angeles. (Def.'s Request for Judicial Notice[7] ("RJN"), Ex. B at 1-2.)

---

[7] Defendant requests the court take judicial notice of the following documents: (1) the plaintiff's Complaint; (2) the Ortega Complaint; (3) the Ortega Notice of Removal; (4) the Ortega First Amended Complaint (5) the Ortega Order Granting J.B. Hunt's Motion for Judgment on the Pleadings; (6) the Ortega Order Granting J.B. Hunt's Motion for Summary Judgment; (7) the Ortega Notice of Appeal; (8) the Ortega Memorandum Opinion by the Ninth Circuit; (9) the Ortega Petition for Rehearing En Banc; (10) the Ortega Order denying the Petition for Rehearing En Banc; (11) Ortega Order Setting Trial Date; (12) the Aceves Complaint; (13) the Aceves Amended Complaint; (14) the Aceves Order Granting Stay; (15) the Parks Complaint; (16) the Parks Notice of Removal; (17) the Parks Order Staying Action; and (18) the

14

Specifically, Ortega asserts class-wide claims in the operative First Amended Complaint for (1) recovery of unpaid minimum wages; (2) recovery of unpaid wages at the agreed rate; (3) failure to provide meal and rest periods; (4) failure to provide accurate wage statements; (5) violations of Labor Code Section 203; (6) declaratory relief; (6) injunctive relief; and (7) unfair business practices. (RJN, Ex. D) Plaintiff seeks to represent "[a]ll of Defendants' California-based, local, and regional intermodal and local and regional DCS drivers who worked for Defendants during the Relevant Time Period." (Id. ¶ 19.)

On October 17, 2007, defendant removed the case to the United States District Court for the Central District of California. (RJN, Ex. E.) The district court granted defendant's Motion for judgment on the pleadings regarding plaintiffs' meal and rest break claims, and then granted J.B. Hunt's Motion for summary judgment on plaintiffs' minimum wage claims, stating these claims were preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). (See id., Exs. E, F). While the case was pending appeal, the Ninth Circuit decided Dilts v. Penske Logistics, LLC, 769 F.3d 637 (9th Cir. 2014), which held that California's meal and rest

---

Ortega Order Granting Joint Stipulation to Continue the Trial Date. (See Docket Nos. 9-2, 14.) The court takes judicial notice of these documents because they are public records whose existence "can be accurately and readily determined from sources whose accuracy cannot readily be questioned." See Fed. R. Civ. P. 201(b); see also United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007) (stating that courts "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")

15

break laws are not preempted by the FAAAA. See Ortega v. J. B. Hunt Transp., Inc., 694 Fed. Appx. 589, 590. The Ninth Circuit vacated and remanded the district court's order granting summary judgment. See id. Defendant was denied a rehearing en banc and has until February 5, 2018, to file a Petition for Writ of Certiorari. (RJN, Ex. J.) The Ortega trial is set for July 24, 2018. (Id., Ex. A.)

### 2. The Aceves Action

Aceves asserts class-wide claims in the operative First Amended Complaint for (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to pay all accrued and vested vacation/Paid Time Off ("PTO"); (4) failure to provide accurate wage statements; (5) failure to pay all wages due upon separation; (6) unfair business practices; and (7) civil penalties under the Private Attorney General Act ("PAGA"). (See RJN, Ex. M.) Aceves seeks to represent "current and former employees of defendants who work as non-exempt truck drivers." (Id. ¶ 3.) Due to the overlap with Ortega, Aceves was stayed by the San Bernardino County Superior Court on September 29, 2013 as to all claims except plaintiff's putative class claim for failure to pay all accrued and vested vacation/PTO and claims for unfair business practices and for PAGA penalties to the extent they were based upon the unpaid vacation/PTO claim. (See RJN, Ex. N.)

### 3. The Parks Action

Parks asserts class-wide claims in the operative Complaint for (1) unfair business practices; (2) failure to pay minimum wages; and (3) failure to provide accurate itemized wage statements. (See RJN, Ex. O.) The plaintiffs in Parks seek to

16

represent all California truck drivers employed by J.B. Hunt in California since February 1, 2012. (Id.) On December 8, 2016, J.B. Hunt removed the action to federal court. (See RJN, Ex. P.) On January 30, 2017, the court stayed the entire action pending resolution of the appeal in Ortega. (RJN, Ex. Q.)

### B. Discussion

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). In evaluating whether to stay proceedings, the court is concerned with balancing competing interests and should consider: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Woodcox v. Volkswagen Grp. of Am., Inc., Civ. No. 2:17-215 WBS DB, 2017 WL 915352, at *4 (E.D. Cal. Mar. 7, 2017) (citing Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)); see also Landis, 299 U.S. at 254-55; CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). The burden is on the requesting party to show that a stay is appropriate. Clinton v. Jones, 520 U.S. 681, 708 (1997).

As to prejudice to plaintiff, plaintiff argues a stay will simply delay litigation because the outcome of the class actions will have no bearing on plaintiff's claims. (Pl.'s Mot. at 5 (Docket No. 5).) Plaintiff submitted a sworn declaration of his intent to opt out of the Ortega, Aceves, and Parks class

17

action.  (Adkins Decl. (Docket No. 11-1).)  Thus, plaintiff will not be bound by the judgment in any of the previously filed class actions.  See Murphy v. J.B. Hunt Transp. Servs., Inc., Civ. No. 10-1568 WHA, 2010 WL 2106191, at *1 (N.D. Cal. May 25, 2010) (stating there is no point in a stay where plaintiff brought an individual case and submitted a sworn declaration certifying that he will opt out of the Ortega class action); Cousins v. Walmart Stores Inc., Civ. No. 1:15-318-DBH, 2015 WL 10487975, at *2 (D. Me. Sept. 14, 2015) (where plaintiff represents that she will opt out of the class action the court does not consider plaintiff to be an actual party to both proceedings).  In addition, there are other claims here that have nothing to do with either class action.  See Murphy, 2010 WL 2106191, at *1.  For instance, plaintiff asserts claims for unpaid overtime as well as claims for disability discrimination, retaliation, and wrongful termination, none of which were alleged in the other cases.  (See Compl.)  Thus, it would be inconvenient and a waste of judicial resources to separate the claims and proceed on claims one through seven only, when all of plaintiff's claims arise from plaintiff's employment and subsequent termination.

The court notes that there may be some hardship and inequity to defendant in denying the stay.  Defendant argues that plaintiff's claims are substantially similar to those brought in the other actions and thus there is a risk of inconsistent rulings.  However, "defendant's concern about the possibility of inconsistent court rulings on the legal issues if this matter proceeded simultaneously with the [other] action[s] does not constitute sufficient hardship to warrant a stay" because "[t]he

analysis and ruling of one district is not binding on another district." See Cousins, 2015 WL 10487975, at *2.  In addition, because plaintiff intends to opt out of the other class actions, "the possibility of inconsistent rulings between districts exists regardless of whether the matter is stayed."  Id.  Defendant also argues that it will accrue significant costs to defend this action.  (See Def.'s Mot. at 21-22.)  However, to the extent that the discovery in the other class actions has any bearing on this case, it has likely already been conducted.

       IT IS THEREFORE ORDERED that plaintiff's Motion to remand this action (Docket No. 6) be, and the same hereby is, DENIED.

       IT IS FURTHER ORDERED that defendant's Motion to stay (Docket No. 9) be, and the same hereby is, DENIED.

Dated: March 20, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE